Michael D. Zoldan – 028128
**SHIELDS PETITTI & ZOLDAN, PLC**
5090 N. 40th Street, Suite 207
Phoenix, Arizona 85018
Telephone: (602) 718-3330
Facsimile: (602) 675-2356
E-Mail:  mdz@shieldspetitti.com
E-Mail: docket@shieldspetitti.com

*Attorney for Plaintiff Tracey Phillips*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Tracey Phillips | **No.** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CG Infinity, Inc., | |
| Defendant. | |

Plaintiff Tracey Phillips ("Plaintiff" or "Ms. Phillips"), by and through her undersigned counsel, brings this Complaint against Defendant CG Infinity, Inc. ("Defendant" or "CG Infinity"), and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court also has original jurisdiction over Plaintiff's claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, pursuant to 29 U.S.C. § 1132(e)(1).

1412883.1

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Plaintiff resides in this District.

3.    All conditions precedent to the filing of this action have been satisfied. On or about March 25, 2026, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue in connection with EEOC Charge No. 540-2026-03197. This action is filed within 90 days of Plaintiff's receipt of that Notice.

**PARTIES**

4.    Plaintiff Tracey Phillips is an adult individual who resides in Maricopa County, Arizona, and at all times relevant to this Complaint resided in Maricopa County, Arizona.

5.    Defendant CG Infinity, Inc. is a corporation organized under the laws of the State of Texas, with its principal place of business at 5420 W. Plano Parkway, Plano, Texas 75093. At all times relevant to this Complaint, CG Infinity employed was Plaintiff's "employer" within the meaning of 42 U.S.C. § 12111(5) and 29 U.S.C. § 1002(5).

**FACTUAL ALLEGATIONS**

6.    In November 2021, CG Infinity hired Ms. Phillips as a Consultant 2. She was entrusted with major client initiatives and internal mentorship responsibilities, consistently receiving recognition for her professionalism, performance, and leadership.

7.    Ms. Phillips was promoted to Principal I, reflecting her continued strong performance and the company's confidence in her abilities.

1412883.1

8. In August 2025, Ms. Phillips underwent a full hysterectomy and began short-term disability leave.

9. On September 4, 2025, after her condition worsened, Ms. Phillips was hospitalized at Mayo Clinic, where doctors discovered a brain tumor. She underwent emergency neurosurgery shortly thereafter.

10. Ms. Phillips's brain tumor, and the resulting need for neurosurgery, chemotherapy, and radiation, constitutes a "disability" within the meaning of the ADA, 42 U.S.C. § 12102, as it substantially limits one or more major life activities, including but not limited to neurological and brain function, thinking, concentrating, working, and normal cell growth.

11. At all relevant times, CG Infinity had actual knowledge of Ms. Phillips's disability and her medical treatment.

12. While Ms. Phillips was on short-term disability, she sought leave under the Family and Medical Leave Act ("FMLA").

13. However, CG Infinity initially denied Ms. Phillips's FMLA eligibility, incorrectly asserting that she did not work within 75 miles of a qualifying worksite. Only after intervention by her husband, Jeff Rosenthal, and pointed clarification of Department of Labor regulations did CG Infinity reverse course and acknowledge her FMLA eligibility.

14. That initial denial was not merely a technical error. It caused unnecessary stress and uncertainty while Ms. Phillips was undergoing serious medical treatment and

1412883.1

foreshadowed CG Infinity's intention to discriminate against her rather than accommodate her disability.

15.     While Ms. Phillips was recovering at home from brain surgery, within two weeks of the procedure, agents of CG Infinity and its benefits consultant, E.J. Herring, attempted to transfer her into a different corporate division, ostensibly to "improve her coverage," but in reality, upon information and belief, to shift her from the company's self-insured plan to a fully insured plan in order to limit CG Infinity's direct financial exposure.

16.     CGI, through its agents, first attempted to effectuate this change directly with Ms. Phillips, despite prior care-related communications having occurred through her husband. After Ms. Phillips informed Mr. Rosenthal about the proposed insurance switch, Mr. Rosenthal objected to the change in writing and requested that all further communications about benefits be directed through him, as Ms. Phillips was not in a condition to make such decisions at that time.

17.     Upon information and belief, CG Infinity's attempt to reclassify Ms. Phillips's division and coverage while she was incapacitated from brain surgery was undertaken for the purpose of reducing CG Infinity's financial exposure to her medical claims.

18.     Ms. Phillips underwent a second surgery in October 2025. Mr. Rosenthal provided CG Infinity with weekly status updates on her condition throughout this period.

19.     On October 24, 2025, Ms. Phillips's doctors determined that her tumor was malignant.

1412883.1

20.     On October 30, 2025, upon receiving a treatment plan from Ms. Phillips's medical providers, Mr. Rosenthal emailed Nikki Lopez and Julianne Churches at CG Infinity to provide an update. That email explicitly informed CG Infinity that Ms. Phillips's tumor was cancerous, that she would begin chemotherapy and radiation within approximately one week, and that her treatment would last six weeks. Critically, the email stated that Ms. Phillips was expected to be cleared to return to work at the end of that treatment period, in six weeks.

21.     At that moment, CG Infinity had clear notice that: (a) Ms. Phillips was undergoing treatment for a life-threatening illness; (b) her treatment had a defined, finite duration of approximately six weeks; and (c) she intended and expected to return to work upon completion of treatment.

22.     Less than twenty-four hours after receiving Mr. Rosenthal's October 30, 2025 email, CG Infinity, through its benefits agent E.J. Herring, terminated Ms. Phillips's employment. The termination was conducted by telephone on October 31, 2025.

23.     On October 31, 2025, Mr. Herring sent an email stating that Ms. Phillips had reached the "12-week maximum for FMLA" and that "in order to continue coverage, Tracey must be active, under FMLA, or COBRA. Her last option is COBRA, therefore employment must be terminated in order to access coverage." This email was sent in coordination with CG Infinity's human resources department and was copied to company leadership.

24.     Mr. Herring's email constitutes a written admission that the sole reason for terminating Ms. Phillips's employment was to force her onto COBRA continuation coverage.

1412883.1

25.     There is no legitimate reason why CG Infinity could not have continued Ms. Phillips's employment in an inactive or accommodated status during her cancer treatment, and in particular, during the six-week period.

26.     At no point before, during, or after the termination did CG Infinity engage in the interactive process required by the ADA.

27.     CG Infinity never discussed with Ms. Phillips or her husband any reasonable accommodations, including but not limited to: an extension of medical leave, remote or light-duty work arrangements, a modified schedule, or any other accommodation that would have allowed her to remain employed during her six-week treatment period.

28.     Within days of termination, Ms. Phillips's COBRA paperwork was processed, her medical coverage was terminated retroactively to October 31, 2025, and her employment record was closed without any discussion, severance, or effort to preserve her employment.

**COUNT I**
**Disability Discrimination in Violation of the ADA**
**42 U.S.C. § 12112(a)**

29.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

30.     The ADA prohibits covered employers from discriminating against qualified individuals on the basis of disability in regard to discharge and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

31.     At all relevant times, Ms. Phillips was a "qualified individual" within the meaning

1412883.1

of the ADA. She had successfully performed her job duties for approximately four years, and she notified Defendant that she anticipated returning to work within approximately six weeks of beginning treatment.

32. Ms. Phillips had a "disability" within the meaning of the ADA, 42 U.S.C. § 12102. Her brain tumor and associated conditions substantially limited one or more major life activities, including but not limited to neurological and brain function, normal cell growth, thinking, concentrating, and working.

33. CG Infinity terminated Ms. Phillips's employment because of her disability. The temporal proximity between CG Infinity's receipt of Ms. Phillips's cancer diagnosis and treatment plan on October 30, 2025, and her termination less than 24 hours later on October 31, 2025, is direct evidence of discriminatory motive.

34. Upon information and belief, CG Infinity's own written communications confirm that the decision to terminate was motivated by Ms. Phillips's medical condition and the desire to limit the company's financial exposure to her medical claims.

35. As a direct and proximate result of CG Infinity's discriminatory conduct, Ms. Phillips has suffered and continues to suffer damages, including but not limited to lost wages and benefits, lost earning capacity, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

1412883.1

**COUNT II**
**Failure to Accommodate in Violation of the ADA**
**42 U.S.C. § 12112(b)(5)(A)**

36.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

37.     The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A).

38.     Once an employer becomes aware that an employee has a medical condition that may require accommodation, it has an affirmative obligation to engage in an interactive process to determine whether reasonable accommodations can enable the employee to continue employment.

39.     CG Infinity was aware that Ms. Phillips had a disability requiring accommodation.

40.     CG Infinity completely failed to engage in the interactive process. It never discussed any accommodation options with Ms. Phillips or her representatives before, during, or after the termination. Instead, CG Infinity terminated her employment less than 24 hours after learning of her treatment timeline.

41.     CG Infinity cannot demonstrate that any reasonable accommodation would have imposed an undue hardship. Ms. Phillips had a defined, finite treatment period of approximately

1412883.1

six weeks, after which she expected to return to full duty.

42.    As a direct and proximate result of CG Infinity's failure to accommodate, Ms. Phillips has suffered and continues to suffer damages, including but not limited to lost wages and benefits, lost earning capacity, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

## COUNT III
### Interference with Protected Rights in Violation of ERISA § 510
### 29 U.S.C. § 1140

43.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

44.    ERISA § 510 provides that it is unlawful for any person to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary" of an employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.

45.    At all relevant times, Ms. Phillips was a participant and beneficiary in one or more employee benefit plans sponsored by CG Infinity, including but not limited to health insurance, short-term disability, and long-term disability plans.

46.    CG Infinity terminated Ms. Phillips's employment for the specific purpose of interfering with her continued attainment of benefits under those plans. CG Infinity's own written communications establish that it terminated her employment to force her onto COBRA continuation coverage, thereby shifting the cost of her ongoing cancer treatment away from the

1412883.1

company and onto Ms. Phillips.

47.    Prior to termination, CG Infinity also attempted to transfer Ms. Phillips into a different corporate division to move her from the company's self-insured plan, upon information and belief, to a fully insured plan, further evidencing its intent to limit financial exposure to her medical claims.

48.    CG Infinity's actions were taken with the specific intent of preventing Ms. Phillips from continuing to receive employee health benefits and long-term disability coverage as an active employee.

49.    As a direct and proximate result of CG Infinity's conduct in violation of ERISA § 510, Ms. Phillips has suffered and continues to suffer damages, including but not limited to loss of employee-sponsored health insurance coverage, increased out-of-pocket medical expenses, loss of long-term disability benefits, and other consequential damages. Pursuant to 29 U.S.C. § 1132(a), Ms. Phillips is entitled to equitable relief, including reinstatement of benefits, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tracey Phillips respectfully requests that this Court enter judgment in her favor and against Defendant CG Infinity, Inc. and award the following relief:

A. Compensatory damages, including back pay, front pay, lost benefits, and other economic losses in amounts to be proven at trial;

B. Damages for emotional distress, humiliation, mental anguish, and loss of enjoyment

1412883.1

of life;

C. Equitable relief, including reinstatement or, in the alternative, front pay;

D. Equitable relief under ERISA, including reinstatement of employee benefits and such other equitable relief as the Court deems appropriate pursuant to 29 U.S.C. § 1132(a);

E. Punitive damages for Defendant's willful and malicious conduct;

F. Reasonable attorneys' fees, costs, and expenses of litigation pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 1132(g);

G. Pre-judgment and post-judgment interest as allowed by law; and

H. Such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED this 9th day of April, 2026.

SHIELDS PETITTI & ZOLDAN, PLC

By /s/ *Michael Zoldan*
    Michael Zoldan
    5090 N. 40th Street, Suite 207
    Phoenix, AZ 85018
    *Attorney for Plaintiff Tracey Phillips*

1412883.1